# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MACARIO ANTONIO HERNANDEZ,**

**Plaintiff,**

-vs-                                                    **Case No.  6:08-cv-473-Orl-22DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND

### A.    Procedural History

Plaintiff filed for SSI benefits on August 8, 2005. R.12. He alleged an onset of disability on June 28, 2005, due to injuries sustained during a motor vehicle accident. R. 12, 15, 74. His

application was denied initially and upon reconsideration. R. 21-24, 32-37. Plaintiff requested a hearing, which was held on November 5, 2007, before Administrative Law Judge Robert Marcinkowski (hereinafter referred to as "ALJ"). R. 208-36. In a decision dated November 26, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-20. Plaintiff timely filed a Request for Review of the ALJ's decision on December 14, 2007. R. 8. The Appeals Council denied Plaintiff's request on February 11, 2008. R. 5-8. Plaintiff filed this action for judicial review on April 1, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born August 29, 1979 and on his alleged onset date of June 28, 2005, he was 24 years of age. R. 12, 18, 53, 59, 212, 215. He completed the ninth grade and was "still working on" his GED at the time of the hearing. R. 15, 212, 213. Plaintiff had past relevant work as a carpet cleaner, home restoration service, having a skill level of three and a physical demand of heavy. R. 72, 75, 230.

Plaintiff had no significant history of illness or injury prior to his alleged onset date. R. 85, 127. Plaintiff was injured on June 28, 2005 as a passenger in a rollover motor vehicle accident on the Interstate Highway. R. 85, 127, 215-16. As a result of his injuries, Plaintiff underwent an open reduction and internal fixation of a left posterior wall fracture and decompression of a left-sided nerve. R. 83, 88-89. A pre-operative CT of the pelvis showed a fracture of the left superior acetabular rim and subluxation and dislocation of the left femoral head. Post-operative CT showed reduction of the left acetabular fracture with a plate and screws transfixing the posterior column and reduction of a previously noted subluxation with satisfactory alignment and no evidence of dislocation and stable postoperative changes of the left hip. R. 86, 90, 93, 95, 105. He was released with a twenty-pound

weight-bearing restriction for the first three months. R. 89. About two months after his car accident, on August 11, 2005, Plaintiff was walking through a crowd of people in downtown Orlando when he was "bumped by a car." R. 127. "He noticed people scattering, then he heard someone yell, "freeze." R. 127. "Two police officers used Tazer guns on him. He was thrown to the ground and was handcuffed. He reports that some people in the crowd were fighting and the police believed he was one of the people fighting. He was taken to jail." R. 127. After several witnesses came forward on his behalf, the case against him was dropped. R. 127. The incident aggravated his pelvic pain; he did not seek any further medical care for seven more weeks until he began seeing Dr. Shea on September 28, 2005. R. 127.

Following treatment for his hip/pelvic injury, Plaintiff also complained of low back pain, pelvic pain, and knee cramps. R. 21, 23, 62, 68, 74. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from status-post left hip fracture and a back disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work except to occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl; must avoid climbing ladders/ropes/scaffolds; to ambulate with a cane; and to occasionally operate foot controls with the lower left extremity. R. 14. In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for the reasons set forth in the body of the decision. R. 17-18. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work as a carpet cleaner. R. 18. Considering Plaintiff's vocational profile and RFC, the Medical-Vocational

Guidelines (the grids) in conjunction with the testimony of a vocational expert (VE) who considered Plaintiff's limitations, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy, as a food and beverage order clerk, a maintenance service dispatcher, and a new account interviewer. R. 19. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

Plaintiff now asserts three points of error. First, he argues that the ALJ's decision was not based on substantial evidence because the ALJ failed to consider the side effects from medication on Plaintiff's ability to work. Second, he claims the ALJ erred by finding he had the RFC to perform a reduced range of sedentary work contrary to his treating physician's statements. Third, he asserts that the ALJ erred by improperly applying the pain standard and in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III. ANALYSIS

#### A.    Side effects from medication

Plaintiff claims that the ALJ erred in finding that the side effects from Plaintiff's medications were mild and would not significantly interfere with his ability to work. Doc. No. 13 at 6. Plaintiff

takes exception to the ALJ's finding that "although [Plaintiff] has alleged side effects from the use of medications, the record indicates generally that those side effects are mild and would not interfere with the claimant's ability to perform work activities in any significant manner." R. 17. The Commissioner argues that the ALJ's determination that side effects would not interfere with Plaintiff's ability to work was supported by substantial evidence. Doc. No. 15 at 5.

In support of his argument, Plaintiff points specifically to notations in the record that he had to discontinue Flexeril a month earlier because he was concerned about the amount of time that he was sleeping (R. 116), Lortab and Zanaflex pain medications made him "woozy" (R. 64), and one of the "really strong pain medications" he had taken affected his driving. R. 217. As the Commissioner points out, the treating records as a whole from Dr. Shea in particular reflect that, although Plaintiff saw Dr. Shea once per month, Plaintiff complained only once in January 2006 about the side effects of Zanaflex, and the prescription stopped in July 2007. R. 124, 201. Other records indicate that the side effects from Plaintiff's medications were "tolerable" (R. 118) and on a form Plaintiff submitted to Dr. Shea on September 5, 2007, Plaintiff listed only three prescription medications: Percocet, Lidoderm patches, and Ambien, and the only side effect was stomach problems. R. 198.

The Commissioner is also correct that there is no other indication in Dr. Shea's treatment notes Plaintiff complaining of side effects of any other medication, including Lortab, which was only prescribed to him in September and November 2005 (R. 126, 130). R. 116-207. Dr. Shea notes that "his medications continue to work fairly well for [Plaintiff], although he would like a prescription to help with sleep." R. 200. Plaintiff's complaints about excessive drowsiness were limited to a single visit in July 2006 during a period when Dr. Shea was still adjusting Plaintiff's medications. R. 116. There are numerous references in Dr. Shea's notes dated 2007 that Plaintiff has trouble sleeping and

would like a prescription to assist with sleep; clearly excessive drowsiness was not a long-term side effect of the medications he was prescribed. *See*, *e.g.*, R. 200, 201, 202, 204, 205, 206.

Plaintiff also complains that the ALJ curtail Plaintiff's opportunity to specify side effects because the ALJ directed Plaintiff's counsel during the hearing to file a medication list rather than have Plaintiff testify to the list of medications at the hearing. Doc. No. 13 at 7. Simply because the ALJ asked for the written medication list, Plaintiff was not precluded from testifying specifically about the side effects he was experiencing. In fact, during the hearing, Plaintiff did exactly that. He testified specifically that he saw Dr. Shea once per month and one of the medications Dr. Shea was then-prescribing contained a warning on the bottle to avoid operating heavy machinery, which led Plaintiff to avoid driving a car. R. 218. Plaintiff did submit a medications list, listing Exyir for pain, Ambien for sleep aid, and Lieoderm [sic] patches for pain. R. 81.

The ALJ properly considered the evidence in the record and Plaintiff's testimony at the hearing concerning the side effects of Plaintiff's medications. Accordingly, the ALJ's finding that the side effects from Plaintiff's medications were mild and would not interfere with the claimant's ability to perform work activities was based on substantial evidence.

**B.    RFC and the treating physicians' opinions.**

Plaintiff contends that the ALJ failed to consider the expert medical opinion of Dr. Shea that due to multiple pelvic fractures and injuries to his neck, back and left knee, Plaintiff had not been able to work. Doc. No. 13 at 8.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Commissioner contends that the opinion letters by Dr. Shea were more akin to a note a patient might request to excuse an absence to his employer to explain why he had not returned to his past position. Doc. No. 15 at 8-9. The Court agrees that Dr. Shea's June 11, 2007 letter reads more like an explanation of Plaintiff's situation rather than an opinion of Plaintiff's medical status or employability:

> To Whom It May Concern:
>
> Mr. Hernandez sustained injuries to his neck, back and left knee, as well as multiple pelvic fractures, due to a motor vehicle accident on 06/28/05. A lumbar MRI on 10/06/05 revealed a disc herniation at the L4-5 level. He has not been able to work due to his injuries.

R. 195, 203 (same). As the Commissioner points out, it is unclear to whom the letter was addressed. A similar letter dated May 10, 2006 adds that "Mr. Hernandez is motivated to improve and has been attending physical therapy." R. 120. The May 10 letter follows a visit to Dr. Shea on April 12, 2006, in which Dr. Shea went over his "IME evaluation report with him," which must have elicited a negative reaction from Plaintiff. Dr. Shea's notes state: "He reports being shocked at the way his

words were twisted. He states that he did tell the doctor that he has increased pain the day following physical therapy but he did not intend to convey the idea that he didn't find therapy to be helpful. He does not feel able to return to work as a general laborer. Mr. Hernandez reports he will do whatever it takes to get better." R. 121. Although it is not clear which "IME" Dr. Shea refers to, the consultative examination by Dr. Perdomo was completed contemporaneously on April 6, 2006 and does note: "He has continued to complain of left hip and more recent lower back pain since stating that he is still on physical therapy. . . He has been off work since the accident stating that he was doing carpet cleaning at the time." R. 106.

The Commissioner argues that, to the extent Dr. Shea's generic letters could be construed as his "opinion," the ALJ was not required to give them full weight them because they were not inconsistent with the ALJ's own conclusion that Plaintiff could not perform his *past* relevant work at the medium exertional level, as a carpet cleaner. Dr. Shea's generic letters do not address whether Plaintiff would be restricted in the future from working at non carpet-cleaning medium exertional jobs or all jobs or what specific restrictions would be.

In general, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). However, the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating

physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In this case, the ALJ found that Plaintiff was capable of sedentary work with additional restrictions based on Dr. Shea's medical treatment records[1]. The ALJ specifically cited the MRI results: mild disc bulging at L4-5 and disc protrusion at L5-S1; and disc bulging at C5-6, with no other evidence of disc herniation, canal stenosis, or forminal encroachment in the cervical spine. R. 16 (citing reports at 131-33). However, Dr. Shea's letters did not present objective medical findings of Plaintiff's functional limitations, such as his ability to sit, stand, and walk during the work day, but instead consist of Plaintiff's subjective reports of his symptoms. As the ALJ noted, "Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor." R. 17. The ALJ noted that "Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. Additionally, . . . the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms." R. 17. The ALJ carefully considered the medical evidence in the record and gave Dr. Shea's treatment records the appropriate weight.

---

[1]Plaintiff's points about the findings of Dr. Perdomo or the state reviewing physician, who opined Plaintiff could perform light work, are not relevant because the ALJ did not rely on either of their opinions, according them "little weight." R. 18.

**C.     Pain and credibility.**

Plaintiff asserts that the ALJ erred by improperly applying the pain standard and in failing to properly evaluate the credibility of his subjective complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, although the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. R. 17. The ALJ did not refer to the Eleventh Circuit's pain standard, however, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 15, 17-18. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as

"his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards: he determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, and assessed the credibility of Plaintiff's alleged complaints.

In this case, the ALJ offered a very detailed explanation for his discounting of Plaintiff's allegations and limitations:

> A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability-onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.  Additionally, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disability symptoms and limitations.  The claimant testified that he drives, takes care of his own personal needs and hygiene, fixes sandwiches and uses [the] microwave, goes to stores with mother or sister every two weeks, and goes out for rides and hangs out with friends.
>
> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has ben essentially routine and/or conservative in nature.  Additionally, the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but he medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.  Moreover, although the claimant has alleged side effects from the use of medications, the record indicates generally that those side effects are mild and would not interfere with the claimant's ability to perform work activities in any significant manner.
>
> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor.  Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.
>
> While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of the effects of left hip fracture and a back disorder, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the claimant, which would preclude all work activity.  The record fails to show that the claimant has periods of hospitalization, nor does the record show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability. . . .
>
> [A]fter considering all the factors set out in that section [416.929] of the regulations, the undersigned finds that the claimant's subjective complaints are not fully credible considering the claimant's own description of his activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and

information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning his ability to work.

In support of this conclusion, the undersigned references the lack of significant findings by the consultative examination. Upon physical examination, Dr. Perdomo reported that the claimant was alert and oriented times three in no acute distress. He was observed walking down the hall without any difficulties, without any assistive device for ambulation. He sat comfortably during the examination and was able to get on and off the examining table without any problem. The neck was supple [with] no masses, lymphadenopathy, or thyromegaly, without any jugular venous distention or bruits. The extremities revealed no edema, cyanosis, clubbing, or ulceration. There was painful left hip flexion, however, there was good distal pulses and full range of motion of the upper and lower extremities. The claimant complained of left hip and lower back pain, however, he was able to squat and stand on toes and heels. The examination of the back revealed no deformities or tenderness, with full range of motion fo the cervical spine. The straight leg raise test was negative. The neurological examination was intact with normal sensory, motor, and deep tendon reflexes. His coordination and station was normal. There were no neurological gait deficits.

R. 17-18.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff challenges the credibility finding, arguing they were not based on substantial evidence and applied an incorrect legal standard. In rearguing points made previously, Plaintiff challenges the ALJ's findings that Plaintiff's side effects from medication were mild and Dr. Shea's lack of work restrictions on Plaintiff. Plaintiff also argues that the ALJ improperly rejected Plaintiff's allegations of pain by citing activities of daily living of short duration. Doc. No. 13 at 11-12. The Commissioner

argues in response that the ALJ properly found that Plaintiff's medications do not significantly affect his ability to work and Dr. Shea's letters did not restrict Plaintiff from working. Doc. No. 15 at 13-14. Additionally, Plaintiff's activities of daily living as cited by the ALJ were properly considered and were but one of many factors discussed.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including Plaintiff's sporadic and minimal earnings record; his activities of daily living, the conservative level of medical care received, discrepancies between his assertions and the medical reports, Plaintiff's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, and the findings made at the consultative examination. The ALJ's opinion is borne out by the low earnings records in the file; Plaintiff had no earnings whatsoever for years 2002, 2003, 2006, and 2007, and earnings of $1186 to $1770 in 1999 to 2001. R. 54.

Other aspects of Plaintiff's testimony were also less than credible. Plaintiff testified at the hearing that he spent two to three months in a wheelchair after the car accident on June 28, 2005. R. 219. Yet six weeks later, on August 11, 2005, he was walking around downtown Orlando and was either involved in or adjacent to a fight, which led to his being tasered by the police during the fracas. R. 99, 127. Plaintiff's hearing testimony that he was "still working on" his GED (at age 25) was also questioned by the ALJ. R. 213. The ALJ also had to press Plaintiff for more specific answers about his daily activities, as his initial answers were vague or evasive. R. 225-27. By the ALJ: "[Y]ou mentioned that you are – some friends would take you out for a ride or you'd go out for a ride, just go for [a] ride? Do you go to malls, restaurants, movies?" R. 227. Plaintiff answered, "No. We'll go for a ride. I'll go hang out at a friend's house. Pretty much what we can do." R. 227.

As to Plaintiff's receiving conservative medical treatment, the medical records show that his treatment was comprised of medication, chiropractor visits and, initially, physical therapy (although

he attended only eight sessions between November 2005 and February 2006).  R. 116-207; R. 123. The last record in the file from Dr. Shea, dated August 2007 noted that Plaintiff continued to have pain, but "[h]is medications continue to work fairly well for him."  R. 200.  As the ALJ noted, there had been no hospitalizations, and the chiropractic treatment was beneficial.  R. 121.  Dr. Shea made a referral "several months" before May of 2007 for Plaintiff to see an orthopedic surgeon, Dr. Roberts, but Plaintiff never followed through, nor are there any records from Dr. Roberts's office in the file. R. 204, 200-03.

The ALJ discussed in detail his specific reasons for discrediting Plaintiff's subjective complaints, which include inconsistencies between Plaintiff's symptoms and the examination findings, as well as inconsistencies between his statements and his activities of daily living, which are factors the ALJ is directed to consider.  20 C.F.R. § 416.929.  In this case, the ALJ's reasons are supported by substantial evidence.

## IV. CONCLUSION

The record in this case shows that Plaintiff suffered injuries during a motor vehicle accident and he does not enjoy the full health and lifestyle he enjoyed prior to the accident.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court recommends the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 18, 2009.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record